UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KIMBERLY PRIOR,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

18-CV-1074
DECISION & ORDER

On October 2, 2018, the plaintiff, Kimberly Prior, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On June 4, 2019, Prior moved for judgment on the pleadings, Docket Item 8; on October 3, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 15; and on October 24, 2019, Prior replied, Docket Item 17.

For the reasons stated below, this Court grants Prior's motion and denies the Commissioner's cross-motion.[1]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

**I.     ALLEGATIONS**

Prior argues that the ALJ erred in two ways. Docket Item 8-1. She first argues that the ALJ erred in determining her mental residual functional capacity ("RFC") because he did not give the opinion of her treating psychiatrist controlling weight. *See id.* at 20-26. She also argues that, evening assuming the ALJ's RFC determination was correct, the ALJ nevertheless erred in concluding that she could find work with her specific limitations. This Court agrees that the ALJ erred and, because that error prejudiced Prior, remands the matter to the Commissioner for proper consideration of Prior's mental RFC.

## II. ANALYSIS

When determining a claimant's RFC, an ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). But an ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the claimant's] medical impairments." *See* 20 C.F.R. § 404.1527(a)(2), (c)(2); *see also Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order). In fact, a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2).

Before an ALJ may give less-than-controlling weight to a treating source's opinion, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted). These are the so-called "*Burgess* factors" from *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source opinion "is a procedural error." *Id.* at 96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

3

Here, the ALJ accorded less-than-controlling weight to the opinion of Prior's treating psychiatrist, Andrew R. Reichert, M.D., without explicitly considering several *Burgess* factors.

Dr. Reichert treated Prior from 2001 through 2017 for schizoaffective disorder, panic disorder with agoraphobia, and bipolar disorder. *See, e.g.*, Docket Item 7 at 390, 400, 450. Dr. Reichert prescribed different antipsychotic, antidepressant, and anti-anxiety medications over the course of that treatment. *See, e.g., id.* at 401, 420. And he offered several opinions about Prior's ability to function.

For example, in March 2016, Dr. Reichert opined that Prior's "emotional liability/instability"—the result of her bipolar disorder—"ha[d] resulted in her inability to maintain gainful employment." *Id.* at 633. In March 2017, Dr. Reichert opined that Prior showed a "[s]ubstantial loss of ability to perform the [following] activit[ies] in regular, competitive employment": remember work-like procedures, maintain attention for two-hour periods, make simple work-related decisions, get along with coworkers or peers, and respond appropriately to changes in a routine work setting. *Id.* at 743-44. He also opined that Prior showed a "[c]omplete loss of ability" to "complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* Dr. Reichert explained that Prior was "intermittent[ly] manic, marked by severe agitation acceleration, disinhibition . . . . At best patient is fragile, easily thrown into state of

decompensation. Can become psychotic/paranoid." *Id.* at 744. He also noted that Prior's condition had persisted since at least 2001. *Id.* at 745.

The ALJ gave "little weight" to Dr. Reichert's opinion because it was "vague," "not explained," "inconsistent with his medical source statement, which was fairly benign," and "not supported by the evidence or other opinions." *Id.* at 30. But before doing so, the ALJ did not "explicitly" consider several *Burgess* factors. For example, although the ALJ referred to a number of different treatment notes in the record, he began with notes from 2014 and never even acknowledged that Dr. Reichert had treated Prior consistently since 2001. The ALJ thus failed to "explicitly" consider "the frequency, length, nature, and extent of [Dr. Reichert's] treatment." *See Greek*, 802 F.3d at 375. Nor did the ALJ discuss how Dr. Reichert's training as a psychiatrist and his role managing Prior's extensive medication list might provide him with unique insight into her mental functioning vis a vis, for example, a psychologist. In other words, the ALJ failed to "explicitly" consider "whether the physician is a specialist." *Id.* And while the ALJ rejected some of Dr. Reichert's opinions "as not supported by the evidence or other opinions," Docket Item 7 at 30, he never said what that evidence or those opinions were, and he certainly did not "explicitly" address "the amount of medical evidence supporting the opinion," *Greek*, 802 F.3d at 375.

"Because the ALJ procedurally erred, the question becomes whether 'a searching review of the record assures [this Court] that the substance of the [treating-physician] rule was not traversed'—*i.e.*, whether the record otherwise provides 'good reasons' for assigning 'little weight'" to some of Dr. Reichert's opinions. *See Estrella*, 925 F.3d at 96 (alterations omitted) (quoting *Halloran*, 362 F.3d at 32); *see also Zabala*

5

*v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand where "application of the correct legal principles to the record could lead [only to the same] conclusion"). The Court finds no such assurance here.

In rejecting Dr. Reichert's opinion, the ALJ relied primarily on, and gave "great weight" to, the opinion of the non-examining consulting psychologist, T. Harding, Ph.D. Docket Item 7 at 30. Dr. Harding reviewed Prior's records at the request of the Social Security Administration. Based on that review—and that review alone—he opined in February 2015 that Prior was not significantly limited in carrying out instructions, working in coordination with others, sustaining an ordinary routine, making simple work-related decisions, interacting appropriately with the general public, asking simple questions, being aware of normal hazards and taking appropriate precautions, and traveling in unfamiliar places or using public transportation. *Id.* at 92-93. Likewise, he opined that Prior was only moderately limited in maintaining attention and concentration, maintaining a regular schedule, completing a normal workday without interruptions for psychologically-based symptoms, responding appropriately to supervisors, getting along with coworkers, maintaining socially appropriate behavior, responding appropriately to workplace changes, and setting realistic goals and making plans independently of others. *Id.*

Relying so heavily on the opinion of a consultant—especially one who has never examined the claimant in person—is error. That is particularly so when the claimant presents with a history of complex mental illness and when the consultant's opinion differs from that of a long-time treating psychiatrist. Indeed, the Second Circuit has "cautioned that ALJs should not rely heavily on the findings of consultative physicians

6

after a single examination," a "concern [that] is even more pronounced in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella*, 925 F.3d at 98 (first quoting *Selian*, 708 F.3d at 419); *see also id.* at 97 (explaining that because "[c]ycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, . . . it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is [not disabled]" (second alteration in original) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014))). And here, the consultant did not have the benefit of even a one-time examination, having only reviewed the records.

Relying on Dr. Harding's opinion at the expense of Dr. Reichert's highlights the very concern raised by the Second Circuit. Dr. Reichert explained that Prior was "*intermittent*[*ly*] manic" and "easily thrown into state of decompensation." Docket Item 7 at 744 (emphasis added). A simple review of the records—without the benefit of having interacted with the patient over the course of treatment and through manic episodes—therefore was unlikely to provide the sort of insight needed to understand Prior's ability to function in a workplace setting. At the very least, the ALJ was required to acknowledge Dr. Reichert's superior position in assessing Prior's mental functioning and then to provide "good reasons" for rejecting that assessment.

What is more, contrary to the ALJ's finding, there indeed was medical evidence in the record supporting Dr. Reichert's opinion. For example, Dr. Reichert noted that Prior entered a manic phase in October 2014, *id.* at 484, and that she presented as anxious and paranoid in March and October 2015, *id.* at 544, 550. And Dr. Reichert's

7

medical source statement itself supports his conclusion that Prior could not maintain competitive employment. He explicitly found that she had substantial limitations in areas such as maintaining attention and focus, remembering work-like procedures, and responding appropriately to changes—limitations that render his opinion far from, as the ALJ characterized it, "fairly benign," *see* Docket Item 7 at 30. Rather than address these more concerning treatment notes and opinions, the ALJ focused only on the positive notes and relied on the opinion of a psychologist who never examined Prior.

The ALJ's error, moreover, was to Prior's detriment. The ALJ found that Prior had the following mental RFC:

> [Prior can] perform sedentary[2] work . . . except . . . she is limited to simple, routine tasks, which can be learned after a short demonstration or within 30 days; work that does not require travel to unfamiliar places[;] and work that is limited to occasional interaction with co-workers, and no more than superficial interaction with the public. She is limited to work that does not require teamwork, such as on a production line, and work that requires doing the same tasks every day with little variation in location, hours or tasks.

Docket Item 7 at 23. The ALJ then found that "[c]onsidering [Prior's] age, education, work experience, and [RFC], there [were] jobs that exist[ed] in significant numbers in the national economy that [Prior] could perform." *Id.* at 31. Specifically, the ALJ credited

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

8

the testimony of a vocational expert that Prior could find work as a surveillance system monitor, envelop addresser, or document preparer. *Id.*

But Dr. Reichert opined that Prior had substantial limitations in maintaining attention and focus, Docket Item 7 at 743-44, and the vocational expert testified that if Prior were "off task approximately 25 percent of the workday," she could not perform any of the jobs that otherwise fit her RFC, *see id.* at 81. The vocational expert also testified that Prior could not perform any of those same jobs if she were to miss three or more days of work per month. *id.*—a limitation strongly suggested by Dr. Reichert's opinion that Prior could not complete a workday or workweek without needing an "unreasonable number and length of rest periods," *id.* at 744. In sum, the ALJ's error in rejecting Dr. Reichert's opinion without following the procedural mandates of the treating-physician rule was far from harmless and worked to Prior's disadvantage.

This Court therefore remands the matter for reconsideration of Dr. Reichert's opinion and Prior's mental RFC. The Court "will not reach the remaining issues raised by [Prior] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made."). But on remand, the ALJ should consider and specifically address the impact of Prior's response to stress on her ability to work. *See Stadler v. Barnhart*, 464 F.Supp.2d 183, 189 (W.D.N.Y. 2006) (citing SSR 85-15, 1985 WL 56857 (Jan. 1, 1985); *Welch v. Chater*, 923 F. Supp. 17, 21 (W.D.N.Y. 1996)) ("Because stress is 'highly

9

individualized,'" the ALJ must "make specific findings about the nature of [the claimant's] stress, the circumstances that trigger it, and how those factors affect [her] ability to work.").  The ALJ also should consider whether Prior requires additional breaks during the workday due to her pain medications and additional days off to seek treatment for her multiple impairments, and, if so, whether such requirements render her unable to work.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 15 is DENIED, and Prior's motion for judgment on the pleadings, Docket Item 8, is GRANTED.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:   March 25, 2020
         Buffalo, New York

                                              */s/ Lawrence J. Vilardo*
                                              LAWRENCE J. VILARDO
                                              UNITED STATES DISTRICT JUDGE